**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David M. BELANGER, Defendant–Appellant.**

**Nos. 90–2812, 90–2913.**

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1991.

Decided July 3, 1991.

---

Ruth M. Heitz, Office of the U.S. Atty., Madison, Wis., for plaintiff-appellee.

Victor Arellano, Lawton & Cates, Madison, Wis., for defendant-appellant.

Before POSNER, FLAUM, and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

In May 1990 a jury convicted David Belanger of possession with intent to distribute marijuana and being a felon in possession of a firearm. At sentencing, the district court determined that Belanger had been previously convicted of two controlled substance felonies, and therefore sentenced him under the career offender provisions of the Sentencing Guidelines. *See* U.S.S.G. § 4B1.1. Belanger received a twenty-five year sentence for the drug offense, and a concurrent five-year term for the firearm charge. On appeal, he challenges the district court's determination that his two prior felony convictions qualify him as a career offender within the meaning of the guidelines. We affirm the district court's determination that Belanger is properly classified as a career offender, but nevertheless vacate his sentence and remand for

resentencing as a result of an error in the district court's sentencing calculations.

The Sentencing Guidelines direct that an individual who has been convicted of a felony that is either a crime of violence or a controlled substance offense should receive an enhanced sentence as a career offender if he has been previously convicted of at least two felonies which are themselves either crimes of violence or controlled substance offenses. *See* § 4B1.1. The enhancement is significant. While as a general matter, sentences under the guidelines may vary greatly within the statutorily-authorized range of punishment depending on a variety of factors, Congress has directed that career offenders be sentenced "at or near the maximum term authorized." 28 U.S.C. § 994(h).

At Belanger's sentencing hearing, the government introduced evidence of two prior state court felony convictions he had received for controlled substance offenses to support its request that he be sentenced as a career offender. The first conviction was for possession with intent to deliver hashish in Dane County, Wisconsin in 1986. The second was a 1988 cocaine trafficking conviction in Dade County, Florida. On appeal, Belanger contests only the relevance of the former conviction to the career offender calculus, arguing that the conviction is constitutionally infirm and thus cannot play a role in the district court's sentencing calculations. *See* U.S. S.G. § 4A1.2, Application Note 6 ("Convictions which the defendant shows to have been constitutionally invalid may not be counted in the criminal history score."). When arraigned on the possession with intent to deliver charge, Belanger pleaded no contest and was fined $500. He appeared in court and entered his plea without legal representation. He argues on appeal that his waiver of his sixth amendment right to counsel at the time of his arraignment was not knowing and intelligent, and that the resulting conviction was therefore constitutionally infirm. *See United States v. Pallais*, 921 F.2d 684, 692 (7th Cir.1990) (sixth amendment forbids the government from basing an increase in punishment on a conviction resulting from a proceeding in

which the defendant was denied the assistance of counsel). In the alternative, Belanger contends that the 1986 conviction should not qualify him as a career offender because it is more accurately characterized as a misdemeanor than a felony.

I.

■ Both the Supreme Court and this court have extensively discussed the obligation of a trial court to ensure that a defendant who chooses to waive his right to counsel does so knowingly and intelligently. "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942)); *see also Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 2398, 101 L.Ed.2d 261 (1988); *Von Moltke v. Gillies*, 332 U.S. 708, 723–24, 68 S.Ct. 316, 323–24, 92 L.Ed. 309 (1948) (plurality opinion of Black, J.); *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023–24, 82 L.Ed. 1461 (1938). The judicial inquiry and educative effort concerning the importance of legal representation that must necessarily precede any knowing and intelligent waiver of counsel cannot be cursory or by-the-way in nature; the trial court must "conduct a formal inquiry" in which it asks the necessary questions and imparts the necessary information. *United States v. Moya–Gomez*, 860 F.2d 706, 733 (7th Cir. 1988). As to the particulars of the inquiry, we have strongly suggested that a trial court, at a minimum, inquire of the defendant's age and level of education, and inform him of the crimes with which he was charged, the nature of those charges, and the possible sentences they carry. *See, e.g., Moya–Gomez*, 860 F.2d at 732; *United States v. Mitchell*, 788 F.2d 1232, 1235–36

(7th Cir.1986). Further, a defendant should be made aware of the "difficulties he would encounter in acting as his own counsel." *Moya–Gomez,* 860 F.2d at 732.

■ After reviewing the 1986 Dane County plea and sentencing proceedings, we are convinced that Belanger's waiver of his right to counsel was indeed knowing and intelligent. Belanger was represented by appointed counsel at his bail hearing and initial appearance. Before appearing at a preliminary hearing, he chose to retain private counsel. Belanger soon ran out of money, however, and was forced to discharge his attorney after the preliminary hearing. He did not again request the services of a public defender, and thus appeared at his arraignment without counsel. After the prosecuting attorney explained to the trial court that Belanger had agreed to plead no contest pursuant to a plea bargain, the court engaged Belanger in a discussion about his plea as well as his lack of representation.

The trial court first informed Belanger of his possible sentencing exposure under the statute—five years in jail and a $15,000 fine. The judge then asked Belanger if he wished to have an attorney appointed to represent him before the proceedings continued any further. The judge explained that an attorney "could assist you in a variety of ways, or help you judge whether or not the plea bargain is an appropriate one, a fair one, under the circumstances, or whether you should go to trial, or could assist you in making all these decisions, presumably, because they would have the experience." App.R. at 125. Belanger responded that he understood the benefits of legal representation. The court told Belanger that despite these benefits, he could nevertheless waive his right to counsel if he chose. Belanger answered that he wished to do so. The judge then continued his inquiry. He asked as to Belanger's age, employment status, educational background, and literacy. He explained the particulars of the charge to which Belanger was pleading no contest and emphasized that it was a felony. The court also ascertained that Belanger had read and understood the criminal complaint lodged against him and that he did not quarrel with the facts alleged therein. Finally, the court inquired whether Belanger had read and understood the "Plea Questionnaire and Waiver of Rights" form which he had earlier signed, and which detailed the constitutional rights that Belanger was waiving by pleading no contest.

We do not lightly conclude that a defendant has waived his right to counsel; indeed, in determining whether a defendant has knowingly and intelligently waived his sixth amendment right we will "indulg[e] every reasonable presumption against the waiver." *Wilks v. Israel,* 627 F.2d 32, 35 (7th Cir.1980), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 874, 66 L.Ed.2d 811 (1981). In this case, however, the transcript of the trial court proceedings indicates that the presiding judge engaged Belanger in a careful, thorough discussion regarding the crime with which he was charged and the risks attending his decision to proceed *pro se.*[1] We therefore conclude that Belanger's waiver of his sixth amendment right to counsel was knowing and intelligent.

## II.

■ Belanger also contends that the possession with intent to deliver charge, while "titled a felony," should have been treated by the district court as a misdemeanor. Characterization of the crime as a misdemeanor is appropriate, he argues, because of the minor sentence he received—a fine of $500 plus costs. In support of this argument, Belanger points to his Pre–Sentence Investigation report in which the U.S. Probation Officer suggested that "[t]here

---

1. In the future, we suggest that a trial judge fully explain to a defendant the nature and import of the crime or crimes with which he is charged *before* asking him whether he desires to consult with counsel before finally tendering his plea. Common sense suggests that such factors might bear on a defendant's decision to request legal representation or proceed *pro se,* and thus should be brought to the fore first. That the trial court in this case did not follow this order of business does not, however, render infirm what was otherwise a constitutionally adequate inquiry.

may be reason for downward departure based on the adequacy of the defendant's criminal history since it *over-represents* his criminal conduct, as reflected by the disposition of the Dec. 1986 conviction, a fine of $615." (emphasis in original). We do not find Belanger's argument persuasive. Application Note 3 to the career offender sentencing guideline provides that a conviction for a controlled substance offense should be considered a "prior felony conviction" if the offense in question was punishable by "imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony *and regardless of the actual sentence imposed.*" § 4B1.2, note 3 (emphasis added); *see also United States v. Gant,* 902 F.2d 570, 572 n. 1 (7th Cir.1990); *United States v. Hester,* 917 F.2d 1083, 1084-85 (8th Cir.1990); *United States v. Thompson,* 891 F.2d 507, 509 (4th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). Belanger could have received a prison term of up to five years for his controlled substance offense, *see* Wis.Stat. § 161.41(1m)(b) (1985); under § 4B1.2, this fact alone is sufficient to justify characterization of that conviction as a prior felony.

### III.

Although we have now concluded addressing Belanger's arguments on appeal, we are not yet through, for Belanger's sentence has been grossly miscalculated. Under the sentencing guidelines, calculation of the § 4B1.1 career offender sentence enhancement is linked to the maximum term of imprisonment for the offense in question. The probation officer, government, and district court all determined that the statutory maximum for the controlled substance offense committed by Belanger was 30 years, and that consequently, his sentencing range for that offense under § 4B1.1 was 262–327 months. The district court sentenced Belanger to a term of 300 months, in the middle of the range.

These calculations were in error. Belanger was convicted of possessing with the intent to distribute 9.15 kilograms of marijuana in violation of 21 U.S.C. § 841. Pen-alties for violations of § 841 are keyed to the quantity of controlled substance involved in the offense. Offenses involving less than 50 kilograms of marijuana are governed by 21 U.S.C. § 841(b)(1)(D). An individual who has violated that subsection of § 841 and has been previously convicted of one or more felony drug offenses may be sentenced to a term of imprisonment of "not more than 10 years." This is a far cry from the 30–year statutory maximum that the government and the district court used to compute Belanger's career offender enhancement. *See* 21 U.S.C. § 841(b)(1)(C). Using the correct 10–year statutory maximum figure, Belanger's guidelines sentencing range for the § 841(b)(1)(D) offense is 100–120 months.

We recognize that § 841 is a dense statute whose half-dozen different subsections each deal with different quantities and different controlled substances. But it is not *that* difficult to read. Both the prosecution's proposal of a sentence outside the bounds of the law, and defense counsel's failure to object to such a proposal were negligent. The duty of candor incumbent upon the prosecution suggests that upon discovering at oral argument from this court that Belanger had been sentenced *ultra vires,* the United States should have considered filing a supplemental authority conceding error. As for Belanger's counsel, his neglect to double-check the district court's sentence calculation points to less than full assistance of counsel.

### IV.

In conclusion, we affirm the district court's decision to sentence Belanger as a career offender but remand for resentencing in compliance with 21 U.S.C. § 841(b)(1)(D).